William G. **MILLIKEN**

v.

**COASTAL ACREAGE, INC.**

Supreme Judicial Court of Maine.

Jan. 3, 1979.

Paine & Lynch by Martha J. Harris (orally), Errol K. Paine, Bangor, for plaintiff.

Frank B. Walker (orally), Ellsworth, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On February 4, 1974 plaintiff William G. Milliken, a licensed real estate salesman within the meaning of 32 M.R.S.A. § 4001(3),[1] brought a civil action in the Superior Court (Penobscot County) against defendant Coastal Acreage, Inc., a corporation licensed as a real estate broker. Plaintiff claimed that in accordance with "house" policy of defendant corporation that governed, by common consent, the sharing of commissions paid to defendant on sales of real estate, he was entitled to a 50% share of each commission paid on sales of real estate situated, respectively, in Blue Hill, Maine, Bar Harbor, Maine, and Pennfield, New Brunswick. Having received nothing as to the Pennfield sale, plaintiff claimed 50% of the $20,000.00 commission paid to defendant. Defendant had paid plaintiff 30% of the Blue Hill and Bar Harbor commissions and therefore plaintiff asserted that an additional 20% of each of those was due him.

After defendant filed its answer denying liability to plaintiff, the case was tried by the court without a jury. The court's decision, without special findings of fact (none being requested by either party pursuant to Rule 52(a) M.R.Civ.P.), ordered entry of judgment for $6,000.00, without costs and interest, in favor of plaintiff against defendant. The amount of $6,000.00 represented 30% of the Pennfield, New Brunswick commission, no part of which had been paid to plaintiff.

Defendant has appealed from this judgment as entered, claiming insufficiency of

1. The statute reads:

"A 'real estate salesman' shall mean and include any person employed or engaged by or on behalf of a licensed real estate broker to *do or deal in any activity as included in* subsection 2 for compensation or other valuable consideration."

The "subsection 2" activity referred to is that authorized for a licensed real estate broker by the following language of 32 M.R.S.A. § 4001(2).

"A 'real estate broker' is any person, firm, partnership, association or corporation who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent or lists or offers to list for sale, lease or rent, any real estate or the improvements thereon for others, as a whole or partial vocation. Further, any person, firm, partnership, association or corporation obtaining 3 or more options to purchase real estate within a one-year period for the purpose of finding a buyer for the option, or the real estate under option, within 6 months from the date the option was obtained, must be a real estate broker as defined by this section."

the evidence to support the court's conclusion that plaintiff was entitled to a share of the Pennfield commission. Plaintiff has cross-appealed, contending that though the court correctly concluded that plaintiff was entitled to a share of each of the three commissions here involved, it was wrong in its conclusions as to the amounts due.

We deny both the appeal and the cross-appeal, which raise essentially one, and the same, issue: whether the evidence was sufficient, in accordance with a correct understanding and application of relevant legal principles, to support the conclusory determination of the Superior Court Justice.

On the evidence the Justice was plainly warranted in finding the following circumstances as foundation for his judgment. A "house" policy established by the common consent of defendant corporation and the real estate salesmen employed by, or affiliated with, it governed the sharing of commissions paid to defendant. This house policy became binding on each employed, or affiliated, real estate salesman by virtue of his becoming, and remaining, thus employed or affiliated. For the purposes of the instant case, five parts of this controlling house policy have relevance: (1) defendant corporation as the "house" was entitled to a 50% share of each commission paid it; (2) the remaining 50% would be divided between the salesman who was the "listing" salesman as to the particular sale producing the commission and the salesman who was the "selling" salesman regarding such sale; (3) "listing" salesman designated the salesman who had achieved an arrangement with the owner of the property under which defendant corporation was engaged, or authorized to act, as broker to procure a purchaser of the property; (4) "selling" salesman referred to the salesman who took, or participated in taking, the steps necessary to entitle defendant corporation to a commission on a particular sale; and (5) the percentage share for the "listing" salesman and the "selling" salesman would be fixed from time to time by the majority vote of the licensed real estate salesmen then employed by, or affiliated with, defendant real estate broker.

Defendant acknowledges the existence of such a house policy generally governing the sharing of commissions but contends, on alternative grounds, that it cannot be a proper basis to support the Superior Court Justice's conclusion awarding plaintiff a share of the commission on the sale of the Pennfield real estate.

Defendant maintains that the evidence shows that plaintiff and defendant made a special oral agreement which was intended to render the house policy inapplicable to the commission earned on the sale of the Pennfield, New Brunswick real estate. By virtue of this alleged agreement, plaintiff would become entitled to a share of the commission only if, after consummation of the original sale of the Pennfield property, plaintiff would subsequently achieve a re-sale of portions of that real estate for the benefit of the original purchaser; plaintiff would then be due a share of the commission on the original sale as well as of commission for the resale. Since it is undisputed that there never was a resale of the Pennfield property, or parts of it, defendant contends that plaintiff is not entitled to any share of the commission paid for the Pennfield sale.

Defendant's alternative contention is that even on a finding that no special oral agreement had been made to supersede generally governing house policy, the evidence nevertheless failed to show that plaintiff was a "selling" salesman as to the sale of the Pennfield, New Brunswick real estate. Since nothing in the evidence suggests that plaintiff was a "listing" salesman regarding that property, defendant argues that plaintiff failed to prove entitlement to share in the Pennfield commission.

■ As to defendant's claim of a special oral agreement, it was sharply disputed in the testimony that any such agreement had been made, and it was therefore the province of the Superior Court Justice, as the fact-finder, finally to determine the question. Lacking special findings of fact, we test the correctness of the Justice's conclusory determination by deeming him to have made whatever findings of fact, supported

by the evidence, would support his ultimate conclusion. A finding that the parties had orally agreed as defendant contends would defeat, not sustain, the Justice's conclusion; were such an oral agreement in fact made, no rational basis could exist for a conclusion by the Justice that plaintiff was entitled to share in the Pennfield commission since, as above mentioned, there was no resale of a portion of the Pennfield real estate to fulfill the alleged terms of the agreement. Accordingly, we must take the Superior Court Justice to have found that the parties made no special oral agreement superseding the generally governing house policy.

This leads us to defendant's alternative contention that the evidence fails to support a determination that plaintiff was a "selling" salesman within the contemplation of governing house policy. We reject defendant's claim in this regard, concluding that the evidence was sufficient to support such a finding, as deemed to have been made by the Superior Court Justice. The witnesses disagreed as to the extent of plaintiff's participation in accomplishing the sale of the New Brunswick real estate. We decide that there was sufficient evidence, entitled to credence by the fact-finder, to prove that plaintiff had shown the Pennfield real estate to the ultimate purchaser and had participated not only in consummating the purchase and sale agreement but also in closing the sale. Such activity was plainly enough to constitute plaintiff a "selling" salesman within the meaning of that concept as used in the generally governing house policy.

We are thus brought to the further question, raised by plaintiff's cross-appeal, whether it was error of law for the Superior Court Justice to fix $6,000.00 as the amount prescribed by the governing house policy for a "selling" salesman's share of the Pennfield commission.

The evidence was adequate to support a finding, attributable to the Superior Court Justice in the absence of special findings of fact, that the generally governing house policy was amended, under proper authority and procedure, to provide that, effective January 1, 1973, a "selling" sales-

man's commission share would be 30% (reduced from 40%). Since the sale of the Pennfield real estate was closed *after* January 1, 1973 (on May 15, 1973), the Justice was warranted in finding that as to that sale, plaintiff had not achieved the full status of a "selling" salesman, within the house policy definition of the concept, until after the "selling" salesman's share of the commission had been fixed at 30%. Accordingly, it was proper for the Justice to conclude that plaintiff was entitled to only 30% of the Pennfield commission.

Turning to plaintiff's other contention on cross-appeal, that the Superior Court Justice erred in failing to award him more than the 30% share of the commissions defendant had already paid him for the sales of real estate in Blue Hill and Bar Harbor, we find that the evidence shows that, like the Pennfield sale, each of these sales did not close until after January 1, 1973. Hence, by the same analysis on which we upheld the Superior Court Justice's determination as to plaintiff's share of the Pennfield commission, we sustain the Justice's conclusion that 30% of the Blue Hill and Bar Harbor commissions already paid to plaintiff fully satisfied defendant's obligation to him.

The entry is:

*Appeal denied; cross-appeal denied. Judgment affirmed.*

ARCHIBALD, J., did not sit.